# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| BRITTANY WALTHER, | Case No. 1:16-cv-967 |
| Plaintiff, | Barrett, J.<br>Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## REPORT AND RECOMMENDATION

Plaintiff Brittany Walther filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claim of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On March 11, 2013, Plaintiff filed application for Disability Insurance Benefits (DIB) alleging a disability onset date of September 30, 1999, due to mental and physical impairments. (Tr. 155-61). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On July 31, 2015, ALJ Gregory Kenyon held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff, Plaintiff's mother and an impartial vocational expert. On July 31, 2015, the ALJ issued a written

1

decision denying Plaintiff's claim. (Tr. 13-22). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was 18 years old on date of her alleged onset date of disability. (Tr. 20). She graduated from high school attending special education classes. She has no past relevant work. (Tr. 23, 190). Plaintiff alleges disability due to undifferentiated connective tissue disease; Raynaud's disease; muscle weakness; chronic pain; mild scoliosis; migraines with aura and hypermobility arthralgia.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "Raynaud's syndrome; attention deficit/hyperactivity disorder; depression; and an anxiety disorder." (Tr. 15). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work with the following limitations:

> (1) no concentrated exposure to extreme cold; (2) limited to performing unskilled, simple, repetitive tasks; (3) occasional contact with co-workers, supervisors, and the public; (4) no fast-paced production work or jobs involving strict production quotas; and (5) limited to performing jobs in a relatively static work environment in which there is very little, if any, changes in the job duties or work routine from one day to the next.

(Tr. 17). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that other jobs exist in the national economy that Plaintiff could perform including such jobs as industrial cleaner, warehouse worker, and hand packager. (Tr. 21). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to properly evaluate the opinions of Plaintiff's treating sources, Drs. Mina and Smith; 2) improperly formulating Plaintiff's mental RFC; 3) improperly formulating Plaintiff's physical RFC; and 4) failing to find that Plaintiff's undifferentiated connective tissue disease (UCTD) was a severe impairment. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period,

4

he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Mental RFC[1]*

Plaintiff argues first that the ALJ's mental RFC is not supported by substantial evidence. In this regard, Plaintiff contends that the ALJ failed to give controlling weight to the findings of Plaintiff's treating sources and also failed to properly account for Plaintiff's moderate limitations in concentration, persistence, or pace. Plaintiff's contentions will be addressed in turn.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson,* 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

---

[1] Plaintiff's first and second claims are error will be addressed together.

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.,* No. 09–6081, 2010 WL 3521928, at *6 (6th Cir.Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As noted above, Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of Dr. Rina Mina, Plaintiff's treating rheumatologist and Dr. Andrew Smith, plaintiff's treating psychologist. Notably, Dr. Mina has treated Ms. Walther for a significant period of time as part of a team of treating professionals at Cincinnati Children's Hospital. (Tr. 454-489; 514-519; 571-1002). Dr. Mina is a Board certified specialist in Internal Medicine by the American Board of Internal Medicine. (Tr. 549-551). She is also a Board certified specialist in Pediatrics through the American Board of pediatrics, with a sub-specialty certification in Pediatric Rheumatology. (Tr. 551-52). Dr. Mina was also asked to evaluate Ms. Walther's limitations in a work setting, and offered significant limitations that in a work setting were significantly limited. (Tr. 515-17). Dr. Mina indicated that Ms. Walther's numerous medical impairments would impact her ability to sustain many physical activities on a daily basis, in a competitive work setting. *Id.* Dr. Mina also indicated and that Ms. Walther would likely deteriorate if placed under stress, particularly stress associated with a job, and was likely to have 5 or more partial or full day, unscheduled absences from work each month. *Id.* Dr. Mina

6

identified numerous mental health limitations impacting Ms. Walther's ability to work as well. (Tr. 517-19).

In formulating Plaintiff's mental RFC, the ALJ assigned no weight to the findings of Dr. Mina. In so concluding, the ALJ found that as a rheumatologist, her opinion about Plaintiff's mental health was outside the scope of her medical expertise. (Doc 8-2, (Tr. 18, 549-52). 20 C.F.R. § 416.927(c). The ALJ further noted that Dr. Mina's findings were "wholly inconsistent with the level of treatment [Plaintiff] received and as well as [Plaintiff's] level of daily activities, which including working at a barn, training horses and riding. Plaintiff, however, contends that the ALJ inadequately understood the role of a rheumatologist in the treatment of her mental health impairments and that Dr. Mina could properly evaluate Plaintiff's mental impairments based upon her experience, evaluation, and clinical observations of Plaintiff. Plaintiff's contentions lack merit.

The ALJ's findings relating to Dr. Mina's mental limitations are supported by agency regulations and controlling law. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) ("Dr. Twilla's failure to catalog such restrictions in his treatment notes so as to maintain an accurate medical history calls into question whether Essary was in fact so restricted."). Furthermore, "physicians, with the exception of those specializing in psychiatry ... are totally unqualified to diagnose psychological disorders." *Boyd v. Comm'r of Soc. Sec.*, No. 2:13-CV-789, 2015 WL 1968989, at *14 (S.D. Ohio Apr. 3, 2015), *report and recommendation adopted,* No. 2:13-CV-00789, 2015 WL 3822690 (S.D. Ohio June 19, 2015) (quoting *Lingo v. Sec'y of Health & Human Servs.,* 658

7

F.Supp. 345, 351 (N.D.Ohio 1986). *See also Wetter v. Colvin*, No. 1:12-CV-00364-TAB, 2013 WL 4790616, at *4 (S.D. Ind. Sept. 9, 2013) (finding that the ALJ provided sufficient reasoning for discounting the opinions of these treating physicians. Where the ALJ discredited Dr. Mallace's opinion on Wetter's mental health because Dr. Mallace was a rheumatologist and therefore not qualified to give an opinion on this matter).

With respect to Dr. Smith, the record indicates that Dr. Andrew Smith is a Board-certified psychiatrist specializing in child and adolescent psychiatry, certified by the American Board of Psychiatry. (Tr. 546-48). Dr. Smith has treated Ms. Walther since 2013, and notes her long history of depression and anxiety symptoms, first beginning treatment for depression in first grade. (Tr. 422-430; 524). Dr. Smith also considered Ms. Walther to have symptoms of OCD, with obsessions including keeping things in order and repeating certain actions. *Id.*

Dr. Smith completed an assessment of Ms. Walther's ability to perform many work related functions from an emotional standpoint, and concluded that there were several work activities which he believed were impaired enough that Ms. Walther would be off task up to 25% of the workday or work week: namely, her ability to perform and complete work tasks in a normal work day or work week at a consistent pace; ability to perform at production levels expected by most employers; ability to behave predictably, reliably and in an emotionally stable manner; ability to tolerate customary work pressures. (Tr. 521-24). Dr. Smith also indicated that Ms. Walther's mental health issues would likely result in Ms. Walther's condition deteriorating if she was placed under stress, particularly the stress of an 8-hour per day, 5 day per week job, due to her mental health diagnoses.

8

The ALJ assigned some weight to the findings of Dr. Smith; noting that in the questionnaire completed by Dr. Smith "skewed the meaning of mild and moderate as those terms are defined by Social Security regulations." (Tr. 18). The ALJ further noted that Dr. Smith indicated Plaintiff's restrictions had existed since September 30, 2009, yet, Dr. Smith did not begin treating Plaintiff until March 2013. (Tr. 18). Plaintiff argues that such findings are not refuted by another other treating source and are consistent with the evidence of record. As such, Plaintiff contends that Dr. Smith's findings were entitled to controlling weight.

However, as noted by the Commissioner, in deciding that Plaintiff was not as limited as alleged by both Dr. Smith and Dr. Mina, the ALJ also considered that their opinions were not supported by and was inconsistent with Plaintiff's mental health treatment. See 20 C.F.R. § 416.927(c)(3)-(4) (medical opinions evaluated for supportability and consistency). He explained that the treatment record showed no hospitalizations, minimal treatment at best, discontinued treatment, and significant response to her medications. (Tr. 13, 15). Considering the inconsistency between Plaintiff's treatment (the extent, type, frequency, and effectiveness of it) and Dr. Mina's and Dr. Smith's opinions of disability, the ALJ reasonably rejected their opinions.

The ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. § 416.946; see also 20 C.F.R. § 416.927(e)(2) (although an ALJ will consider opinions from medical sources on such issues as a claimant's RFC, "the final responsibility for deciding these issues is reserved for the Commissioner."). Given the evidence in the record, including the rather unclear findings of "moderately limited" by Dr. Smith, the ALJ properly determined that Plaintiff could perform simple, routine, repetitive work. The

9

ALJ's assessment of Plaintiff's RFC provided a succinct statement of Plaintiff's mental abilities that the VE could readily understand in determining whether other work existed that Plaintiff could perform, without the VE having to make an independent determination of what was meant by "moderately limited."

Last, Plaintiff asserts that the ALJ's mental RFC failed to properly accommodate Plaintiff's moderate limitations due to her mental impairments. Notably, in *Ealy v. Com'r*, 594 F.3d 504, 516 (6th Cir. 2010), the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue,* No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration, that were inconsistent with the ALJ's RFC. Accordingly, Plaintiff's assertion should be overruled in this regard.

*2. Physical RFC Articulation*

Plaintiff argues next that the ALJ's articulation of the physical RFC assessment is cursory and sparse, in that he improperly summarized the medical evidence of record. As such, Plaintiff contends that the ALJ failed to include a narrative discussion of Plaintiff's physical RFC as required by SSR 96-8p. Plaintiff further asserts that the ALJ

erred in failing to give controlling weight to the physical limitations outlined by Dr. Mina. Plaintiff's contentions lack merit.

A claimant's RFC is the most that she can still do despite her functional limitations. 20 C.F.R. §§ 404.1545(c), 416.945(a); SSR 96–8p. The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. §§ 404.1546(c), 416.946(c). Notably, SSR 98-8p requires the ALJ to properly consider all of Plaintiff's impairments and provide a narrative discussion describing how the evidence supports each conclusion. 20 C.F.R. §§ 1520(c) and 404.1545; SSR 96–8p.

Here, Plaintiff argues that the ALJ's discussion of the evidence violates SSR 96-8p's requirement of a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence. She further claims that based on the number of pages in the transcript and the number of paragraphs in the ALJ's decision, the Court cannot ascertain the basis of the ALJ's RFC assessment.

Contrary to Plaintiff's assertion, the ALJ's decision properly explained how he arrived at Plaintiff's physical RFC. Namely, the ALJ considered that the state agency physicians concluded that Plaintiff had no severe physical impairment. The ALJ further noted that while he found Plaintiff's Raynaud's syndrome to be a severe impairment, he agreed with the state agency physicians' opinions that it would not prevent her from performing work at all levels of exertion. Additionally, Dr. Phillip Swedberg, consultatively examined Plaintiff and found that Plaintiff's physical examination was completely normal.

11

The ALJ also properly discounted the physical limitations outlined by Dr. Mina. The ALJ noted that there was absolutely no support for her extreme limitations in the record. The ALJ further considered that such extreme limitations were wholly inconsistent the level of treatment Plaintiff received, as well as her daily activities, which included working at a barn, training horses and riding. (Tr. 18). The ALJ's findings in this regard are consistent with Agency regulations and controlling law. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). *See Cutlip v. Sec'y of HHS,* 25 F.3d 284, 287 (6th Cir.1994) (treating physician opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence"). *See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); see also Soc. Sec. Ruling 96-7p, 1996 WL 374186; *Bradley v. Sec'y* of HHS, 862 F.2d 1224, 1227 (6th Cir. 1988) ("The evidence in this case indicated that Bradley was not inconvenienced by his pain and was able to perform a variety of activities. Accordingly, the Secretary did not err in concluding that Bradley's complaints of pain were not credible.")

In light of the forgoing the undersigned finds that the ALJ properly explained how he arrived at Plaintiff's RFC finding and properly considered the factors outlined in SSR 96-8p. Accordingly, the ALJ's decision is substantially supported in this regard and should not be disturbed.

*3. Step-two*

Plaintiff complains that the ALJ erred at Step 2 of the sequential analysis when he failed to find her undifferentiated connective tissue disease (UCTD) to be "severe." For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) ("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience").

The ALJ noted that Plaintiff also alleged that she suffered from undifferentiated connective tissue disease (UCTD) however; he determined that the evidence of record does not support a finding that this is a medically determinable impairment. (Tr. 13). The ALJ further stated that this diagnosis had been disproven by diagnostic laboratory testing. Plaintiff however, contends that the ALJ misinterpreted the laboratory findings as indicating that she did not have an undifferentiated connective tissue disease (UCTD), when in fact the tests indicated that she did not have lupus. Citing the *National Center for Advancing Translational Sciences, Genetic and Rare Diseases Information Center*, the Commissioner asserts that a determination of UCTD properly considers a diagnosis of lupus. (Doc. 14 at 14). In any event, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Here, Plaintiff has failed to demonstrate any work related limitations due to her UCTD.

More importantly, errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone...." 20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including Raynaud's syndrome; attention deficit/hyperactivity disorder; depression; and an anxiety disorder and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's UCTD as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 15). He also discussed her alleged UCTD as well as several other alleged impairments, and explained his finding that they were not medically determinable or severe impairments. (Tr. 15-16).

14

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRITTANY WALTHER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:16-cv-967

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).